We have four cases this morning. The first is No. 24-1217, Compendium International, Inc. v. Attorney General of the Department of Justice. Mr. Johnson. Yes, Your Honor. Good morning. Good morning. Let me just start by talking about a little bit of the background, some things that I think are undisputed. This case involves a contract to refurbish a 1940s rifle range at the El Toro Marine Corps Air Station. The contract is approximately, I believe it's dated 2016. I think it's undisputed that the level of work that was performed by my client, Compendium, far exceeds the level of work stated in the contract. The FBI, I know personally, uses that. That's your problem, right? What's that? That's your problem. My problem? Yeah, is that the work exceeded what the contract provided for. Well, right, but it exceeded the work because of the authorization by the government. Particularly, I think the most telling thing is the conversations and the agreements with my client and the contracting officer, David Vannouch. But even those conversations, wasn't it clear to your client that something in writing had to be submitted? My client will tell you that I think that there was an agreement about a continuing resolution, and that's why you proceeded. But didn't the contracting officer say something like, you know, well, I'll see if I can get some money, but you've got to file a claim, or something of that sort? The answer to that question is that I will try to get you money, and I am seeking funding for you. And I think if you look at the evidence we cited about his testimony, he totally intended to do that. That may be all well and good, but I'm getting to the part about, you know, but you've got to file a claim. That's certainly what the contract would do. Well, okay, so let's flip this around a second, right? The government basically says, hey, you didn't file your claim in time because you submitted it after final payment. That's absolutely false. The CO testified that he had never submitted anything or received anything that he believed was final payment. And my client has testified there's no final payment. I think what you're saying… But there are documents that say, I understand the argument about, well, this is the last invoice, or the final invoice. But there are lots of documents that say, you know, final invoice, final. I'm not aware of an invoice from my client that says final. And I do know for a fact that Mr. Venoose testified he never had an invoice that he believed was final. We're not here to hear testimony. Didn't the board make findings? Right, and so I'm telling you that those findings, obviously my burden is to show you that I think those findings are incorrect. And I don't think those findings are supported by substantial evidence. That's what I'm here to tell you. What provision of the contract are you claiming was breached by the government? The obligation to pay. They paid you the amount. I completely disagree with that. They did not pay the amount. The amount listed in the contract they paid you. But they received value far above that. Right, but the finding was that your client intentionally destroyed the bathroom and then rebuilt it.  And arguably it just made up for the damage that he caused by his own intentional act that wasn't authorized. Isn't that how the case comes to us? That's what the board found? So let me answer that two ways. First, I disagree with that finding. I don't believe substantial evidence to support that finding. Secondly, we're talking about a cinder block building that was built in the 40s. That is a small fraction of the work that was performed. The work that was performed involved completely rehabilitating a rifle range with state-of-the-art equipment, state-of-the-art markers, or whatever you call the thing that you use in a rifle range. To my mind, and frankly, to my mind that cinder block building is just, it's de minimis compared to the scope of the project that was actually installed by my client. You should get paid because it's de minimis? I'm sorry? You should get paid because it's de minimis? That's not at all what I said. What I'm saying is… Why should you get paid? Because we did work with the request of the government and the work far exceeded what the contract. Where's the request? The request is in probably one of the best evidences. You'll see a drawing that's in the record that was signed by Kevin Darby, the COR, that signs off on the rebuilding of the building. It was signed off on the design. Where did they sign off on it? Don't interrupt. Signed off on the notion that this was part of the contract. The answer is if you're asking me that he say he's going to pay, I believe that the answer to that is that the CO said he was going to pay. But if you're saying that because he signed off on the design… Where did the CO say he was going to pay? What's that? Where did the CO say he was going to pay? You're right. It's testimony. It's not in a written document. That's correct. Where's the testimony? It's cited in the record. Well, I don't understand. Where? You're asking me to give you page and line? Yeah. You're supposed to come here familiar with the record. You ask questions about the record. You're supposed to answer. You don't know the answer. I can find the record. If you go back and look at my brief, I can tell you that. But no, I don't know it off the top of my head. But it does cite – our appendix does cite to that transcript. The brief refers frequently to deposition testimony. Is that the record that the board relied on, or did it only rely on the testimony of the witnesses in front of it? No, it relied on deposition testimony, which was admitted as well. So there was trial testimony and deposition testimony. The board repeatedly said it found the CEO of your client not to be credible. Is there anything we can do except accept that credibility finding? I think if you look at that finding, and the answer is no, I obviously cannot ask you to disagree with that finding because the court made it and he's a fact finder. But I think if you look at that finding, I think it is limited to the testimony about the happenings or circumstances regarding the Cinderblock building in terms of the destruction of that building. Maybe I misunderstood, but it was my impression that the fight here is mostly, if not entirely, about the money expended or the value created on replacing the bathroom, I guess. That's actually not true. The bulk of the money actually goes to the other situations, such as the replacement of the – there's a word that I've drawn a blank of, the targeting system, which basically means you can move targets on the range. There is a lot of work that's done because of the underground obstructions that were encountered and were not anticipated. So if you look at the bulk of what the money is, the bulk of the extra money is really not in the rebuilding of the Cinderblock building. It's in the other items that the FBI and David Vannouse asked for. Asked for that weren't in the original contract. I'm sorry, I don't understand. Things that they asked for that were not in the original contract. Correct, correct. Okay, where do we find in the record that they asked for them? You look at the record and see where they – You don't know where. I mean, you should learn that when you come here to argue, particularly in a substantial evidence case, you need to show us in the record where it is, but you can't do that. Well, I can do that if I go back and look at my brief and tell you that. Go ahead. No, I mean just continue with your argument. We can't – we don't necessarily agree with statements by counsel that something is in the record and you can find it if you look for it. We need to see where it is. And if the issue is is there something in the record, we need to see it in the record. And my understanding was that the briefs set forth that record. That's what I thought the purpose of the briefs was. That's the purpose of the briefs, but the purpose of the oral argument is for you to answer questions from the court, and that requires you to come prepared to cite the record. This is Appellate Advocacy 101. I guess I learned that lesson. Thank you. So, look, I mean fundamentally what we're talking about here from my perspective is I don't think there's any doubt that the government gained a betterment by this work that was performed by my client. The question is whether or not it's just and reasonable for my client to do that work without compensation. The FBI has had the benefit of this project for seven plus years and has not paid for it. That's the fundamental issue to my mind. Anything else? No, I think I'm finished. Thank you. Ms. DelMayer. May it please the Court. The Board's decision finding that Compendium's claims are too late, they are brought two years after the final payment and final release in this case, is supported by substantial evidence, the express terms of the contract, as well as this Court's precedent in Mingus Constructors. As the Court correctly stated, the analysis under the Mingus framework of this Court is straightforward under these facts. Just like in Mingus, the contract required claims to be made prior to final payment. This Court in Mingus explained that since the information regarding any unresolved claims against the government lies with the contractor, common sense indicates that placing the burden on the contractor to accept them in the release is proper. So really the only relevant question for this Court is, did Compendium preserve the claim? And the answer is no, and substantial evidence supports this. If you look at Compendium's challenge here, there's swaths of allegations in both their opening brief and their reply brief that doesn't cite to anything in the record. And then if you look at their actual appendix sites, almost all of them are citing to the president of Compendium's testimony, which the Board heard and found to be not credible. This is a... What about this argument that the, I think it was the contracting officer, said there was no final payment, some fact dispute about finality. Can you address that? So the question was posed to the contracting officer who departed before the end of this contract. And so they generally asked him this question, was there a final payment? And they put the document in front of him and said, you know, is this final payment? And he said, I don't know. You'd have to look to see if it was zeroed out. If you look to the actual evidence relied on by the Board, you have a number of documents. You have at 326, appendix 326, you have the signed release. And if you look at the e-mails surrounding these documents that accompany these documents, it's clear that this contract relationship is coming to an end. They're requesting the final walkthrough, which is accomplished. They're requesting the final application for pay, which can be found at appendix 318 through 324. And then there's the final application for payment, which zeroes out the balance to zero on the contract. And then there's the proof of final payment at appendix 328. And did the Board make findings on the finality of the payment? They did, Your Honor. And they found that this was a final payment. There was some discussion about the government telling the contractor at some point that the government doesn't have funding for any of this additional work. Where would I find that in the appendix? Is there a document that says that, or is that, again, testimony? That was testimony from the President of Compendium, which the Board found to be not credible. And where is that? Can you point me to it? I don't have the exact site for his testimony, Your Honor, simply because the Board found that not to be relevant here and not reviewable by this court under this court's precedent. But there are e-mails, I believe, at ---- I mean, I'm not sure if this is positive one way or the other, but I'm curious. So at appendix 2149, there's e-mail traffic by the FBI that discusses the contractor is their understanding that they're replacing the building that they demolished free of cost for the government, and they just are approving the design. And it says in that e-mail at 2149 that they're building it to make the government whole. So that's some of the competing evidence in the record that the Board took into consideration. And under this court's precedent, it's virtually never clear error if the Board hears two different competing testimony or competing facts and decides one is more credible. So the court doesn't need to go any further. Their analysis can and should end here with looking at the signed release and the final payment. Now, if the court were to hypothetically go forward and look at the underlying merits of the allegation, the claim, and find that the release and the final payment didn't bar the claim and that they overcome their inability to meet their requirements under the differing site conditions and the changes clause, the Board still considered the underlying claims at pages 8 and 9 of their opinion and found the underlying claims still were without merit. So the majority of the work, and I disagree with opposing counsel's characterization of this, the majority of the work pertained to that restroom building that they knew was not authorized to demolish, they knew there wasn't funds to demolish it, and they demolished it anyways. And then a lot of the work that was done after that, so some of the subterranean work, the vast majority of it pertained to their reconstruction of that building. There were a few other items, and they don't set this forth anywhere other than some of their excerpts from the REA, but the contractor officer's final decision talks about this. There's a few other claims where they've added onto the contract, it's not differing site conditions, so there's sort of this characterization that a lot of these claims fall under differing site conditions, but almost all of them pertain to them adding work outside the scope of the contract. For example. You mentioned final release that was given a moment ago. Are you referring to the September 7, 2017 letter? Appendix 326. Appendix 1540. I should probably bring this to your attention, Your Honor. The appendix has a lot of documents that are reproduced at various points, so it's also reproduced at 2140. It's well recognized by this panel that the appendix left something to be desired here, but the document I'm referring to is at appendix 1540. Maybe it's someplace else as well. Yes, Your Honor. Or let me rephrase it. You tell me what release you were talking about. That is the release, Your Honor. That is the release. The one titled final release. The text of the letter, I didn't find anywhere in the text of that letter where compendium said, and we release the government from any further claims. It basically says, you know, we have completed the final walkthrough, and we think everything is done, and we're happy with the work, and if there's any problem, we're happy to fix it. Very truly yours. But yet the discussion in the briefs is all about, well, they gave a final release, so that's the end of the claim. There's a gap there in my thinking. I agree, Your Honor, that this could have been a better final release. I don't discuss the claims. At the same time, Paragraph 4 in the Mingus case discusses that for a final payment, final release, you can look at the surrounding circumstances if you feel like that will further eliminate the conversation, which it certainly does in this case because you have it very clearly established in these e-mails. You have at Appendix 320, you have the FBI responding to the president of the company and confirming that they did the final walkthrough and the project is complete, and then, again, the president asks him to submit final payment, and that's at Appendix 324, and then in response to the request for the final payment for the project completion, there's the confirmation of the final payment at Appendix 328, and at Appendix 2151, it's specifically said in the e-mail that this is the last application for payment. So all the information surrounding these documents is that this is a contractual relationship that is concluding. The project is concluding. The documents say the project is over. This is the final release of the project, and then even if the court were to find that the final release is lacking, you still have the final payment, and all the record evidence supports that there was a final payment, which ultimately bars their claim as well. Does that answer your question, Your Honor? The final argument that they addressed was the quantum area argument, and I believe that's easily answered by this court's precedent in Banquo-Guan and Chisholm that we cited, where if there's an express contract, the express contract dictates the respective rights of the parties, and the parties are bound by that contract, and you can't seek relief under a quantum area. What about the argument that the construction of the restroom facility building was really not part of the contract, so it's outside the contract? And it was unauthorized work. I agree, but is there a distinction there to be made between quantum merit with respect to things that are part of the contract, and you can't alter that by quantum merit, but this is arguably something outside the contract, and therefore not subject to that limitation on quantum merit. But the contract has expressed terms in which they can pursue a change to the contract, so it expressly allows for them to request a change under the change clause, and so there's still a framework within this contract for them to pursue that claim if that was an appropriate claim. Was there any finding that the idea to rebuild that restroom building was at one point part of the contract or considered in the award of the contract? Because I know there were options presented that the government didn't accept, so it seemed to me that the government could have made an argument that any alteration really was in effect an alteration of the terms of the contract and therefore not subject to quantum merit. I just don't know that the board addressed that. You're correct, Ron. I don't think that's explicitly laid out in their opinion, and you are also right that there are these conversations happening where the contractor is continually seeking to find reasons to replace this building, and I believe there's no dispute in the record that it was clear that the agency did not have money for it. They did not authorize it. They submitted a proposal, and on the day that the agency could have elected to do it, the building was already demolished. So these facts and the facts that are supported by the record found by the board, it's clear that this was not an authorized project. They went ahead on their own. They demolished the building, and as a result, under the indemnification clause of the contract, they had to replace that building. All right. Thank you. Thank you, Honor. Okay. Thank you, Ms. Delmar. Mr. Johnson? Yes, thank you, Honor. First, let's cover the final payment issue. I mean, I think the best evidence of that is there is the admission by the contracting officer, David Vannouche, that he never received anything that he believed to be considered a final application for payment. That's at Appendix 4453 through 4554. Is the government correct that he had left before the date of final payment? Yes, you're correct about that. It's also true that Mr. Vannouche stated repeatedly that he intended that the situation be dealt with as part of a continuing resolution and that compendium was entitled to compensation for its work, which I guess gets me to the bigger picture here, which is, frankly— Just on that last point, if he left before the final payment documents, then his testimony doesn't tell us very much, right? I think the answer to that is yes, in part correct. I cannot deny that. The other truth is you'll not see a document that is titled final payment or a final release or anything else in the record. So there's two arguments I would make on that point. Okay, go ahead. I will also say that Mr. Vannouche did testify—let's talk about the restroom building— that that was approved by Mr. Darby and Mr. Vannouche. The contracting officer did say that Mr. Darby had the authorization to approve that work. But the design was approved, not the work, correct? Yes, Your Honor, that's technically correct. In fact, I also find that argument somewhat—I don't personally get it. Frankly, if you're approving a design, what is the approval for if you're not going to pay for it? I don't think the government could possibly consider that Mr. Antizar or a compendium were going to deliver things for free. Well, maybe so, because if your client tore down a building that it wasn't supposed to, it was liable to make a replacement, right? Yes, I can see that argument. I can also say, like I responded to Judge Stark's questions when I first was spoken, the issue of the rebuilding of the restroom building is really just part of the process. In other words, there are many aspects of this project which were not covered by the contract, which were unforeseen by the contract, which were performed. And I think if you look at the cases that talk about these situations, the corner marrow cases we cite in our briefs, I think the concept is that the government should pay and not receive items for free when the work was undertaken under a belief that they should be compensated for. Anything more? I think that's all I have. Okay, thank you. Thank both Council and the committee.